**Date Signed:**
**January 2, 2025**



SO ORDERED.

Robert J. Faris
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF HAWAII

| | |
|---|---|
| In re:<br><br>WING SPIRIT, INC.,<br><br>Debtor. | Case No. 20-01383<br>Chapter 7 |
| DANE S. FIELD, Chapter 7 Trustee,<br><br>Plaintiff,<br><br>vs.<br><br>BANK OF UTAH, Individually, et al.,<br><br>Defendants. | Adversary Proceeding No. 22-90020<br><br>Related ECF Nos: 264, 267, 268, 269, 270, 272, 273, 293 |

1

# ORDER REGARDING
# MOTIONS TO DISMISS SECOND AMENDED COMPLAINT

On December 13, 2024, the Court heard motions to dismiss the second amended complaint brought by defendants Bank of Utah, individually ("BOU"), Bank of Utah, in its Capacity as the Aircraft Trustee of the Matterhorn HondaJet Trust 1 for the Benefit of MAS One USA, LLC ("BOUMT"), Bank of Utah, in its Capacity as the Aircraft Trustee of the Four Aircraft Trusts for the Benefit of Debtor Wing Spirit, Inc. ("BOUWST"), Honda Aircraft Company, LLC ("Honda Aircraft"), Honda Aviation Service Co. Inc. ("Honda Service"), Douglas Lloyd Brennan, MAS One USA LLC ("MAS One"), Seraph Aviation Capital LLC ("Seraph Capital"), Seraph Aviation Management Limited ("Seraph Management"), Eugene O'Reilly, and FASTNET One LLC ("FASTNET").

Appearances for the defendants and plaintiff Dane S. Field, Chapter 7 Trustee for the Bankruptcy Estate of Wing Spirit, Inc. ("Trustee"), were noted on the record.

The parties are familiar with the allegations of the second amended complaint and the standard for evaluating motions to dismiss. Therefore, I will not restate or summarize them here, but instead will state my rulings as follows.

**Count 1 (Constructive Fraudulent Transfer – Sale of Four (4) HondaJet Aircraft and Subsequent Transfers)**

<u>MAS One and BOUMT</u>:  I will deny the motions of MAS One and

2

BOUMT as to Count 1.

The Trustee plausibly alleges a constructive fraudulent transfer of the HondaJet aircraft under § 548[1] and Hawai'i Revised Statutes ("HRS") § 651C-4(a)(2). BOUMT and MAS One argue that Wing Spirit received reasonably equivalent value for the transfer because it received the cash and promissory notes for which it bargained. But they ignore the fact that the $6 million promissory notes issued by a nonexistent entity were phony and worthless from the inception. The Trustee plausibly alleges that, because the notes were phony, Wing Spirit received at least $6 million less than reasonably equivalent value for the aircraft. In any event, the receipt of reasonably equivalent value is a question of fact that is not appropriately resolved on a motion to dismiss. *See Golden v. Clay Lacy Aviation, Inc. (In re Aletheia Rsch. & Mgmt., Inc.)*, BAP No. CC-15-1081-KiTaKu, 2015 WL 8483728, at *8 (9th Cir. BAP Dec. 10, 2015).

The particularity standard of Civil Rule 9(b) does not apply to a constructive fraudulent transfer claim. *See id.* at *13 n.5.

BOUMT argues that it acted at the direction of its trustors and did nothing wrong. But the defendants' intentions and state of mind are not necessary elements of a fraudulent transfer claim. *See Valvanis v. Milgroom*, 529 F. Supp. 2d 1190, 1199 (D. Haw. 2007); *Bay Plastics, Inc. v. BT Com. Corp.*

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

*(In re Bay Plastics, Inc.)*, 187 B.R. 315, 323 (Bankr. C.D. Cal. 1995) ("Constructive fraudulent transfer law applies without regard to intent (except the [debtor's] intent to incur debts . . . .).").

Honda Aircraft and Honda Service: I will partly grant and partly deny the motions of Honda Aircraft and Honda Service as to Count 1.

The Trustee alleges that Honda Aircraft and Honda Service were subsequent transferees of the aircraft from whom he can recover the aircraft or their value. § 550(b). Honda Aircraft argues that it acquired the interest under a lease for which it gave value (in the form of rent payments), that it acted in good faith at the time of the lease (after all, Honda Aircraft accepted phony notes just as Wing Spirit did), and that, at the time of the lease, it did not know that Wing Spirit's transfer of the aircraft was avoidable.

Honda Aircraft's arguments disregard the fact that it received two transfers of interests in the aircraft, each of which must be analyzed separately.

First, Honda Aircraft took leasehold rights in the aircraft pursuant to the lease. The Trustee cannot plausibly allege that Honda Aircraft did not take the leasehold rights for reasonably equivalent value, in good faith, and without knowledge of the voidability of the initial transfer. *See* § 550(b)(1). It is particularly relevant that Honda Aircraft accepted promissory notes from the same nonexistent maker that issued notes to Wing Spirit. Therefore, the Trustee may not recover the leasehold interest in the aircraft

4

from Honda Aircraft.

Later, Honda Aircraft acquired outright ownership of the aircraft as a part of the June 2021 settlement. The Trustee cannot plausibly allege that Honda Aircraft did not give value for the ownership interest in the aircraft. Nor can the Trustee plausibly allege that Honda Aircraft did not take the transfer of the ownership interest in good faith: the lease unconditionally obligated Honda Aircraft to pay the residual value of the aircraft and entitled Honda Aircraft to obtain ownership when it did so; and one cannot plausibly allege that Honda Aircraft did not act in good faith when it paid its own debt. But by then, Honda Aircraft arguably knew that the notes given to Wing Spirit were phony (because the phony notes made in favor of Honda Aircraft had become due and were not paid), and that the underlying transfer of the aircraft from Wing Spirit was an avoidable fraudulent transfer. Therefore, the Trustee can plausibly allege that, insofar as the transfer of the ownership interest in the aircraft is concerned, Honda Aircraft is not entitled to the protections afforded to a subsequent transferee. Accordingly, Honda Aircraft's motion is denied.

Honda Service is allegedly a mediate transferee who took the aircraft from Honda Aircraft and allegedly retains at least one aircraft. The Trustee does not plausibly plead that Honda Service did not take the aircraft for value and in good faith. But the Trustee plausibly alleges that, because Honda Service is an affiliate of Honda Aircraft, Honda Service knew of the avoidability of the transfer from Wing Spirit. Additionally, Count 1 is not

5

U.S. Bankruptcy Court - Hawaii    #22-90020    Dkt # 347    Filed 01/02/25    Page 5 of 19

time-barred under § 550(f), which sets out a limitations period "(1) one year after the avoidance of the transfer on account of which recovery under this section is sought; or (2) the time the case is closed or dismissed."

Accordingly, the motions of MAS One and BOUMT to dismiss Count 1 are denied; the motions of Honda Aircraft and Honda Service are granted in part and denied in part.

**Count 2 (Constructive Fraudulent Transfer – Aircraft Rights)**

<u>MAS One, BOUMT, and Honda Aircraft</u>: Count 2 is the same as Count 1 except it concerns the transfer of Wing Spirit's rights to acquire additional aircraft. The same analysis applies to both Count 1 and Count 2.

Accordingly, the motions to dismiss Count 2 are granted in part and denied in part as discussed above.

**Count 3 (Constructive Fraudulent Transfer – Sublease)**

<u>Honda Aircraft</u>: I will grant Honda Aircraft's motion as to Count 3.

The Trustee fails plausibly to allege that Wing Spirit did not receive reasonably equivalent value under the Sublease. The Trustee fails plausibly to allege that the rent that Wing Spirit agreed to pay under the Sublease was not reasonably equivalent in value to the right to use the aircraft under the Sublease. The Trustee has plausibly alleged that the sale transaction that preceded the Sublease was a fraudulent transfer, but that does not imply that Wing Spirit's obligations under the Sublease are also avoidable as fraudulent.

<u>MAS One and BOUMT</u>: I will grant the motions of MAS One and

6

BOUMT as to Count 3.

MAS One and BOUMT are allegedly subsequent transferees of the rent that Wing Spirit paid under the Sublease. The Trustee can only recover from the subsequent transferees "to the extent" the initial transfer is avoided. § 550(a). Because the Trustee fails plausibly to plead that the initial transfer was constructively fraudulent and avoidable, the Trustee cannot recover from MAS One and BOUMT.

Accordingly, Count 3 is dismissed.

**Count 4 (Constructive Fraudulent Transfer - $200,000)**

Honda Aircraft: I will deny Honda Aircraft's motion as to Count 4.

The Trustee plausibly alleges that the $200,000 received by Honda Aircraft was a constructive fraudulent transfer. The record does not make clear whether the $200,000 payment was tied solely to the Sublease or, as the Trustee argues, whether Wing Spirit paid the fee as a part of the overall transaction, including the sale of the HondaJet aircraft. Thus, it is a factual question whether WS received reasonably equivalent value for the $200,000 payment.

Accordingly, the motion to dismiss Count 4 is denied.

**Count 5 (Actual Fraudulent Transfer)**

FASTNET: I will deny FASTNET's motion as to Count 5.

The Trustee plausibly alleges that BOUMT and MAS One received a fraudulent transfer from Wing Spirit, that Wing Spirit was therefore a creditor of BOUMT and MAS One, and that, like any other creditor, Wing

Spirit is entitled to attack fraudulent transfers made by its debtors, BOUMT and MAS One. The second amended complaint plausibly alleges that BOUMT and MAS One transferred $2.9 million to FASTNET with the intention of hindering, delaying, or defrauding Wing Spirit. This fraudulent transfer claim is not based on §§ 548 or 549 and is not subject to the limitations applicable to those sections. Rather, it rests on HRS chapter 651C.

FASTNET's reliance on *Giacometti v. Arton Bermuda Ltd. (In re Sia)*, 349 B.R. 640 (Bankr. D. Haw. 2006), is misplaced. Count 6 does not implicate a transfer of estate property under § 549.

FASTNET similarly confuses the applicable statute of limitations. The four-year statute of limitations under HRS § 651C-9(1) controls; the two-year statute of limitations under § 549(d) does not.

Unlike a constructive fraudulent transfer claim, the weight of authority holds that a plaintiff must plead an actual fraudulent transfer claim with particularity. *See Takiguchi v. MRI Int'l, Inc.*, No. 2:13-CV-01183-JAD, 2015 WL 1609828, at *2 (D. Nev. Apr. 10, 2015) (surveying cases); *Valvanis*, 529 F. Supp. 2d at 1198 (applying Civil Rule 9(b)'s particularity standard to a claim for actual fraudulent transfer under HRS § 651C–4(a)(1)). The allegations in the second amended complaint satisfy the standard because they "meet the 'who, what, when, where, and how' requirements of [Civil Rule] 9(b) and are 'specific enough to give defendants notice of the particular misconduct . . . so that they can defend

U.S. Bankruptcy Court - Hawaii    #22-90020    Dkt # 347    Filed 01/02/25    Page 8 of 19

against the charge and not just deny that they have done anything wrong.'" *Valvanis*, 529 F. Supp. 2d at 1198.

FASTNET argues that there is no basis for an imposition of punitive damages. Punitive damages are a remedy, and the availability of a remedy is a factual inquiry not appropriate for disposition on a motion to dismiss. *Cheatham v. Jones*, No. 2:23-CV-00475-GMN-EJY, 2024 WL 3159508, at *1 (D. Nev. June 24, 2024) ("[W]hen a defendant files a motion to dismiss a plaintiff's 'punitive damages claim because it is premised solely on lack of supporting factual matter,' rather than based on the 'the argument that punitive damages are precluded as a matter of law,' the argument fails 'because punitive damages are not a claim for relief.'" (quoting *Townsend v. McDonnell*, Case No. 2:18-cv-10011-R-JC, 2019 WL 7882085, at *5 (C.D. Cal. Dec. 12, 2019))). The Trustee's allegations are sufficient.

Accordingly, the motion to dismiss Count 5 is denied.

**Count 6 (Constructive Fraudulent Transfer – FASTNET Transfer)**

<u>FASTNET</u>: I will deny FASTNET's motion as to Count 6.

The Trustee plausibly alleges a constructive fraudulent transfer claim. According to the second amended complaint, Wing Spirit was a creditor of MAS One at the time of the so-called FASTNET Transfer; MAS One was Wing Spirit's debtor; MAS One transferred an asset to FASTNET and did not receive reasonably equivalent value; and the transfer left MAS One without any assets.

Accordingly, the motion to dismiss Count 6 is denied.

**Count 7 (Transferee Liability)**

<u>Brennan</u>: I will deny Mr. Brennan's motion as to Count 7.

The Trustee plausibly alleges that the transfer of $2.9 million from MAS One to FASTNET was made for Mr. Brennan's benefit or, alternatively, that he was a subsequent transferee. Haw. Rev. Stat. § 651C-8(b). For the reasons stated above, Mr. Brennan's argument that the Trustee lacks standing to pursue a postpetition transfer of estate property is unavailing. Additionally, I find that the Trustee's allegations of alter ego are sufficient.

Accordingly, the motion to dismiss Count 7 is denied.

**Count 8 (Fraudulent Inducement)**

<u>MAS One, Brennan, O'Reilly, and Seraph Management</u>: I will deny the motions of MAS One, Mr. Brennan, Mr. O'Reilly, and Seraph Management as to Count 8.

The Trustee plausibly alleges a claim of fraudulent inducement. Hawaiʻi courts have long recognized that a claim for fraudulent inducement requires: "(1) false representations were made by defendants; (2) with knowledge of their falsity (or without knowledge of their truth or falsity); (3) in contemplation of plaintiff's reliance upon these false representations; and (4) plaintiff did rely upon them." *Ass'n of Apartment Owners of Newtown Meadows ex rel. its Bd. of Directors v. Venture 15, Inc.*, 115 Hawaiʻi 232, 263, 167 P.3d 225, 256 (2007), *as corrected on denial of reconsideration* (Sept. 20, 2007) (quoting *Shoppe v. Gucci Am., Inc.*, 94 Hawaiʻi

10

U.S. Bankruptcy Court - Hawaii    #22-90020    Dkt # 347    Filed 01/02/25    Page 10 of 19

368, 386, 14 P.3d 1049, 1067 (2000)) (brackets omitted).

MAS One argues that it was not the maker of the promissory notes, that it had no obligation to ensure that the notes were paid, and that it did not make any misrepresentation. But the Trustee plausibly alleges that MAS One agreed to pay the full purchase price, as evidenced by the language of the bills of sale and the promissory notes, and fraudulently substituted the phony promissory notes for part of the purchase price.

I also reject Mr. Brennan's argument that he did not make any representation and that he is not responsible for MAS One's actions and statements. The Trustee plausibly alleges that MAS One is Mr. Brennan's alter ego. Further, the complaint plausibly supports the inference that Mr. Brennan (or Mr. O'Reilly, or both) was ultimately behind the issuance of the fraudulent promissory notes. Mr. Brennan and Mr. O'Reilly cannot use a limited liability entity to protect themselves from their own tortious conduct. *See, e.g.*, *Fuller v. Pac. Med. Collections, Inc.*, 78 Hawaiʻi 213, 225, 891 P.2d 300, 312 (Ct. App. 1995) ("[I]t is well established that officers, directors, or shareholders of a corporation may be personally liable for the tortious conduct of the corporation, if they actively or passively participate in such wrongful conduct.").

Similarly, I am not persuaded by Mr. O'Reilly's argument that I should dismiss the complaint because he signed the promissory notes in error and did not know that Matterhorn Aviation Services Limited ("MASL") did not exist. The factual question of a party's knowledge is not

11

a proper basis for a motion to dismiss. At minimum, Mr. O'Reilly does not dispute that he knew he was not a director of purported maker MASL yet signed the promissory notes asserting that he was its director.

Mr. O'Reilly contends that, under New York law, an agent is personally liable only if he knew that the principal did not exist. However, his knowledge is a factual question that I will not determine on a motion to dismiss. The Trustee adequately alleges that Mr. O'Reilly knew at the time he signed the promissory notes that MASL did not exist and that it had no intention or ability to pay the notes.

Neither Mr. O'Reilly nor Seraph Management dispute that Mr. O'Reilly signed in the course and scope of his employment with Seraph Management. Under New York law, Seraph Management could be held liable for Mr. O'Reilly's actions, including his fraudulent acts. *See generally Kirschner v. KPMG LLP*, 15 N.Y.3d 446, 465, 938 N.E.2d 941, 951 (2010).

<u>Seraph Capital</u>: I will grant Seraph Capital's motion as to Count 8 and any allegation of joint venture liability between Seraph Capital and Seraph Management.

The second amended complaint does not plausibly allege that Seraph Capital was involved in the issuance of the fraudulent promissory notes. The allegation that Seraph Capital's agent, Louis V. Nardi, was involved in earlier stages of the transaction does not give rise to a plausible inference that Seraph Capital owed any duty to Wing Spirit regarding the phony promissory notes.

U.S. Bankruptcy Court - Hawaii   #22-90020   Dkt # 347   Filed   01/02/25   Page 12 of 19

I also reject the defendants' argument that punitive damages are barred by the economic loss rule. Punitive damages are a remedy, not an independent claim, and the Trustee may pursue multiple theories, so it would be inappropriate to bar the request for punitive damages. *See Jou v. Siu*, No. CAAP-12-0000119, 2013 WL 1187559, at *4 (Haw. App. Mar. 22, 2013) (A plaintiff "may pursue multiple or alternative remedies during the course of trial (although, to the extent [plaintiff's] damages were the same for his fraudulent inducement and breach of contract claims, he cannot recover on both theories).").

Accordingly, Count 8 is dismissed as to Seraph Capital only.

**Count 9 (Fraud – Void Matterhorn Trust)**

BOUMT, BOU, MAS One: I will grant the motions of BOUMT, BOU, individually, and MAS One as to Count 9.

The Trustee seeks to void the Matterhorn Trust under Utah's version of the Uniform Trust Code, which provides that "[a] trust is void to the extent its creation was induced by fraud, duress, or undue influence." Utah Code § 75-7-406.

The Trustee has not explained, however, how a person or entity who is not a beneficiary, settlor, or trustee of the trust can avoid it under Utah Code § 75-7-406. *Compare* Utah Code § 75-7-406 (not specifying who may seek to void a trust under that section), *with* Utah Code § 75-7-410(2) (specifying the parties that may seek to modify or terminate a trust under other sections). The Trustee has not provided any basis for his standing (as

13

a stranger to the trust) to assert such a claim.

Moreover, the Trustee cannot plausibly allege that Wing Spirit was worse off because BOUMT took title to the aircraft as trustee than Wing Spirit would have been if MAS One had taken title in its own name. In other words, the mere existence and creation of a trust did not injure Wing Spirit.

Finally, the Trustee cites no authority for his assertion that voiding the trust would leave title to the aircraft in BOU individually and open it to personal liability. Rather, voiding the trust would likely void the transfer of property to the trustee and leave ownership in the settlor (MAS One).

Accordingly, Count 9 is dismissed.

**Count 10 (Breach of Contract)**

<u>MAS One and Brennan</u>: I will deny the motions of MAS One and Mr. Brennan as to Count 10.

The promissory notes state that MASL is paying part of the purchase price owed by MAS One. MASL's promise did not excuse MAS One from its overarching obligation to Wing Spirit. Similarly, the bills of sale state that Wing Spirit was transferring the aircraft in consideration of the whole purchase price, implying that the buyer owed the full amount due.

In addition, the Trustee has plausibly alleged a case to pierce the corporate veil and hold Mr. Brennan and MAS One liable on the contract. "New York law allows a plaintiff to pierce the corporate veil and sue a non-party for breach of contract when the non-party is an alter ego of one or

14

more signatories." *Paguirigan v. Prompt Nursing Emp. Agency LLC*, 286 F. Supp. 3d 430, 440 (E.D.N.Y. 2017); *see Wiederman v. Spark Energy, Inc.*, No. 19 CIV. 4564 (PGG), 2020 WL 1862319, at *5 (S.D.N.Y. Apr. 14, 2020) ("One such exception applies where a plaintiff can show that the parent corporation exercised complete domination of the subsidiary corporation in respect to the transaction attacked." (quotation marks omitted)). Under New York law, "[t]o pierce the corporate veil, a party must establish that (a) the owners exercised complete domination of the corporation with respect to the transaction at issue; and (b) that such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil. The required inquiry under New York law is fact-intensive" and not well-suited even for summary judgment. *Paguirigan*, 286 F. Supp. 3d at 441 (cleaned up). Similarly, under Delaware law, "to pierce the corporate veil based on an agency or 'alter ego' theory, 'the corporation must be a sham and exist for no other purpose than as a vehicle for fraud.'" *In re Sunstates Corp. S'holder Litig.*, 788 A.2d 530, 534 (Del. Ch. 2001).

Relatedly, "[a]n exception to this general rule [that only signatories are liable on a contract] exists when a non-signatory is found to have manifested an intent to be bound by the contract." *MBIA Ins. Corp. v. Royal Bank of Canada*, 706 F. Supp. 2d 380, 396 (S.D.N.Y. 2009). For example, a non-signatory parent corporation could be held liable if its "conduct manifests an intent to be bound by the contract, which intent is inferable from the parent's participation in the negotiation of the contract, or if the

15

subsidiary is a dummy for the parent, or if the subsidiary is controlled by the parent for the parent's own purposes." *Id.* (quoting *Horsehead Indus., Inc. v. Metallgesellschaft AG*, 239 A.D.2d 171, 657 N.Y.S.2d 632, 633 (1997)). Importantly, "New York courts recognize that a non-signatory can be liable for a contract by manifesting an intent to be bound without being an 'alter ego' of a signatory to the contract." *Id.* at 397.

Thus, both MAS One and Mr. Brennan can be liable under the promissory notes as non-signatories, if they manifested an intent to be bound by the notes, and the Trustee has plausibly alleged that they did so.

<u>O'Reilly and Seraph Management</u>: I will deny the motion of Mr. O'Reilly and Seraph Management as to Count 10.

The Trustee plausibly alleges that Mr. O'Reilly knew that MASL did not exist and that Seraph Management can be held liable for Mr. O'Reilly's actions.

Seraph Management argues that the forum selection clause in the promissory notes dictates that New York courts adjudicate any dispute arising out of the notes. I agree with the Trustee that it would be counterproductive and costly to litigate in multiple fora. *See Haigler v. Dozier (In re Dozier Fin., Inc.)*, 587 B.R. 637, 650-51 (Bankr. D.S.C. 2018). Given the intertwined nature of the transactions, the forum selection clause is overridden by the judicial interest in keeping the related litigation in a single forum.

Accordingly, the motions to dismiss Count 10 are denied.

16

U.S. Bankruptcy Court - Hawaii    #22-90020    Dkt # 347    Filed 01/02/25    Page 16 of 19

**Count 11 (Promissory Estoppel)**

<u>MAS One, Brennan, O'Reilly, and Seraph Management</u>: I will deny the motions of MAS One, Mr. Brennan, Mr. O'Reilly, and Seraph Management as to Count 11. I incorporate my reasoning for Count 10.

**Count 12 (Unjust Enrichment)**

<u>MAS One and Brennan</u>: I will deny the motions of MAS One and Mr. Brennan as to Count 12.

Under Hawai'i law, "a claim for unjust enrichment requires only that a plaintiff prove that he or she conferred a benefit upon the opposing party and that the retention of that benefit would be unjust." *Durette v. Aloha Plastic Recycling, Inc.*, 105 Hawai'i 490, 504, 100 P.3d 60, 74 (2004), *as corrected* (Nov. 1, 2004) (cleaned up); *see N.K. Collins, LLC v. William Grant & Sons, Inc.*, 472 F. Supp. 3d 806, 829 (D. Haw. 2020) ("To recover on an unjust enrichment claim, [plaintiff] must prove that: (1) it conferred a benefit on the [defendants]; and (2) the [defendants] unjustly retained the benefit at [plaintiff's] expense.").

The Trustee has pled a plausible claim of unjust enrichment against MAS One and Mr. Brennan. Additionally, at this stage of litigation, the Trustee need not choose between a contract remedy and equitable remedy. *See Sunday's Child, LLC v. Irongate AZREP BW LLC,* No. CV 13-00502 DKW-RLP, 2017 WL 561338, at *6-7 (D. Haw. Feb. 10, 2017) (denying a motion to dismiss unjust enrichment claim because "[t]he Court cannot determine at this nascent stage whether the [plaintiffs] have an adequate remedy at law

17

U.S. Bankruptcy Court - Hawaii   #22-90020   Dkt # 347   Filed 01/02/25   Page 17 of 19

through their contract claim. . . . [Defendants'] assertion that the parties' dispute will be answered entirely by the parties' contracts may turn out to be correct. At this point, however, that is a prediction, not a certainty").

BOUMT: I will grant BOUMT's motion as to Count 12.

The Trustee cannot plausibly allege that BOUMT was enriched. BOUMT held the aircraft and aircraft rights solely on behalf of MAS One. There is no plausible allegation that BOUMT was enriched by the transfer because BOUMT's interest in the aircraft was so limited.

Accordingly, Count 12 is dismissed as to BOUMT only.

**Count 13 (Breach of Contract)**

BOUWST and BOU: I will grant the motions of BOUWST and BOU as to Count 13.

The Trustee does not plausibly allege that BOUWST had a duty as trustee to evaluate Wing Spirit's decisions to sell the aircraft or to reject Wing Spirit's instructions to transfer the aircraft. The Trustee misreads the provision that, when carryout out its duties, BOUWST must pay "due regard" to Wing Spirit's interests. The "due regard" requirement only applies to BOUWST's duties, and BOUWST's only duty was to ensure that the aircraft stayed in the hands of a U.S. person. The trust documents do not impose any other duty on BOUWST. In light of the plain language of the trust documents, the Trustee fails to plead BOUWST's gross negligence or willful misconduct that would breach the Wing Spirit trusts.

Furthermore, the Trustee cannot plausibly allege any conflict of

18

interest between BOUWST and BOU. BOU's duties in its respective capacities were so limited that it is not plausible that there was a conflict of interest. Additionally, the second amended complaint is devoid of any allegation that Wing Spirit was unaware of BOU's dual role or did not agree to the overall structure or arrangement.

Accordingly, Count 13 is dismissed.

**Leave to Amend**

The Trustee has now had three attempts to allege these claims adequately. There is no reason to think that he could cure the defects in the second amended complaint by further amendment. *See DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) ("A . . . court does not err in denying leave to amend where the amendment would be futile."). Accordingly, all of the dismissals are without leave to amend.

**END OF ORDER**